**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>     Plaintiff,<br><br> v.<br><br>EDWARD RUBEN SOTELO AND<br>JOE ANGELO SOTELO, JR.,<br><br>     Defendants. | Civil Action No. 4:95-cr-00005 |

## DEFENDANTS' MOTION FOR COMPASSIONATE RELEASE AND MEMORANDUM IN SUPPORT

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603 of the First Step Act of 2018, Defendants Edward Ruben Sotelo ("Edward") and Joe Angelo Sotelo, Jr. ("Joe") (collectively, the "Sotelo Brothers") respectfully request the Court grant their Motion for Compassionate Release ("Motion") and reduce their life prison sentences.[1]

---

[1] Pursuant to Local Rule 7.1(h)(i), Defendants contemporaneously filed hereto an Appendix in support of their Motion, which attaches the Declaration of Angela C. Zambrano ("Zambrano Decl."). The evidence referenced herein corresponds to specific exhibits attached to the Appendix and Zambrano Declaration.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

I.     Personal History................................................................................................2

II.    Procedural Background.....................................................................................4

ARGUMENT ........................................................................................................................5

I.     The Court has the authority to reduce the Sotelo Brothers' sentences under the First Step Act and 18 U.S.C. § 3582(c)(1)(A). ..........................................................5

II.    The Sotelo Brothers have exhausted their administrative remedies. .................................7

III.   The sentencing factors in Section 3553(a) demonstrate extraordinary and compelling circumstances for reducing the Sotelo Brothers' sentences................................................8

      A.    The Sotelo Brothers' history and characteristics, including their post-conviction rehabilitation and conduct, weigh in favor of a sentence reduction......9

      B.    The need for the Sotelo Brothers to be punished with life sentences without hope for release no longer exists................................................................13

      C.    The types of sentencing ranges available under the current law for the Sotelo Brothers' offenses support a sentence reduction. ...................................15

      D.    The need to avoid gross discrepancies in sentences between co-defendants supports a compassionate release...............................................................17

      E.    The Sotelo Brothers' release plans demonstrate their commitment to rehabilitation and community engagement.............................................18

      F.    The Sotelo Brothers' deteriorating health and the ongoing COVID-19 pandemic support a sentence reduction. .............................................19

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Concepcion v. United States*,
    142 S. Ct. 2389 (2022)................................................................................................9

*Gall v. United States*,
    552 U.S. 38 (2007)............................................................................................6, 16

*Graham v. Fla.*,
    560 U.S. 48 (2010)..................................................................................................1

*Pepper v. United States*,
    562 U.S. 476 (2011)..............................................................................................12

*Rita v. United States*,
    551 U.S. 338 (2007)................................................................................................6

*United States v. Adams*,
    512 F. Supp. 3d 901 (E.D. Mo. 2021)........................................................9, 13, 17

*United States v. Amarrah*,
    458 F. Supp. 3d 611 (E.D. Mich. 2020)................................................................20

*United States v. Andrews*,
    No. 3:93-CR-31, 2021 WL 3085314 (E.D. Tenn. July 21, 2021) .........................20

*United States v. Booker*,
    543 U.S. 220 (2005)..........................................................................................6, 16

*United States v. Brooker*,
    976 F.3d 228 (2d Cir. 2020)...............................................................................7, 12

*United States v. Brown*,
    457 F. Supp. 3d 691 (S.D. Iowa 2020) ................................................................12

*United States v. Cantu-Rivera*,
    No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) .........................18

*United States v. Cleveland*,
    No. 3:13-CR-479-K-1, 2022 WL 562829 (N.D. Tex. Feb. 23, 2022) .....................9

*United States v. Cooper*,
    996 F.3d 283 (5th Cir. 2021) ..............................................................................2, 7

*United States v. Eccleston*,
    573 F. Supp. 3d 1013 (D. Md. 2021) ...................................................................17

*United States v. Foreman*,
    No. 3:19-CR-62 (VAB), 2020 WL 2315908 (D. Conn. May 11, 2020) .................19

*United States v. Fowler*,
    544 F. Supp. 3d 764 (N.D. Tex. 2021) .................................................................10

*United States v. Gunn*,
    980 F.3d 1178 (7th Cir. 2020) ...............................................................................7

*United States v. Haynes*,
    No. 4:96-CR-40034, 2021 WL 406595 (C.D. Ill. Feb. 5, 2021).....................15, 16

*United States v. Hope*,
    No. 90-CR-6108-KMW-2, 2020 WL 2477523 (S.D. Fla. Apr. 10, 2020) .............13

*United States v. Howard*,
    No. 3:09-CR-305-B-1, 2020 WL 4784697 (N.D. Tex. Aug. 18, 2020) .................19

*United States v. Johnson*,
    No. CR 02-310 (JDB), 2022 WL 2866722 (D.D.C. July 21, 2022) ......................16

*United States v. Johnson*,
    No CR H-96-176, 2020 WL 3618682 (S.D. Tex. July 2, 2020).............................17

*United States v. Leathers*,
    No. 01-CR-20-SRB-1, 2020 WL 7636222 (W.D. Mo. Dec. 22, 2020)............13, 14

*United States v. Ledezma-Rodriguez*,
    472 F. Supp. 3d 498 (S.D. Iowa 2020) ..............................................13, 14, 15, 16

*United States v. Maumau*,
    993 F.3d 821 (10th Cir. 2021) ...............................................................................6

*United States v. McCoy*,
    981 F.3d 271 (4th Cir. 2020) .........................................................................6, 7, 8

*United States v. McGee*,
    992 F.3d 1035 (10th Cir. 2021) .............................................................................7

*United States v. Puckett*,
    No. 3:02-CR-206-K (01), 2022 WL 394758 (N.D. Tex. Feb. 9, 2022) .................21

*United States v. Rainwater*,
    No. 3:94-CR-042-D(1), 2021 WL 1610153 (N.D. Tex. Apr. 26, 2021) .................12

*United States v. Rios*,
No. 21-10371, 2022 WL 101970 (5th Cir. Jan. 10, 2022) ........................................13

*United States v. Robinson*,
No. 18-CR-3042-4-SRB, 2020 WL 5200929 (W.D. Mo. July 22, 2020).............................21

*United States v. Santamaria*,
516 F. Supp. 3d 832 (S.D. Iowa 2021) ...................................................10

*United States v. Shkambi*,
993 F.3d 388 (5th Cir. 2021) .....................................................2, 7, 8, 12

*United States v. Stephenson*,
461 F. Supp. 3d 864 (S.D. Iowa 2020) ...................................................14

*United States v. Thompson*,
984 F.3d 431 (5th Cir. 2021) ........................................................7, 20

*United States v. Tolliver*,
529 F. Supp. 3d 619 (N.D. Tex. 2021) .............................................7, 12, 17

*United States v. Torres*,
464 F. Supp. 3d 651 (S.D.N.Y. 2020).............................................12, 17

*United States v. Tuakalau*,
No. 2:08-CR-431-TC-4, 2022 WL 1091334 (D. Utah Apr. 12, 2022) ...................19

*United States v. Ullings*,
No. 1:10-CR-406, 2020 WL 2394096 (N.D. Ga. May 12, 2020)...........................19

*United States v. Wadena*,
470 F.3d 735 (8th Cir. 2006) ......................................................14

**Statutes**

18 U.S.C. § 2.............................................................................4, 5

18 U.S.C. § 3553 ................................................................... *passim*

18 U.S.C. § 3582 ................................................................... *passim*

21 U.S.C. § 841............................................................................4, 5

21 U.S.C. § 846...........................................................................5

21 U.S.C. § 848...........................................................................4

Pub. L. No. 115-391, 132 Stat. 5194 ..................................................6

**Other Authorities**

164 Cong. Rec. S7314-02 ...................................................................................................6

## INTRODUCTION

A sentence of "life without parole"—as acknowledged by the United States Supreme Court—is synonymous to a "death sentence[]" in that it forever "alters the offender's life by forfeiture that is irrevocable." *Graham v. Fla.*, 560 U.S. 48, 69 (2010). Such severe punishment should only be reserved for the most violent and heinous offenders. For reference, in 2021 the average federal sentence for *murder* was significantly less; 244 months nationally and 235 months in the Fifth Circuit.[2] Edward and Joe Sotelo are brothers and Fort Worth natives who have served over 27 years (329 months) of their respective *life sentences* in federal prison for non-violent drug offenses. They have each been incarcerated for nearly half their lives. Each day they have watched the world and their families from behind prison bars as penance for the serious, but non-violent, mistakes they made as young men with no realistic hope of release.

Society does not expect much of people destined to spend the remainder of their lives in prison. Despite facing such grim prospects, the Sotelo Brothers chose to embrace their circumstances and improve themselves. In the near three decades since their sentencing, the Sotelo Brothers have thoroughly and unconditionally rehabilitated, worked tirelessly to acquire valuable skills, maintained ties to family and friends, and become role models to other men in prison. These are the demonstrable characteristics of two men worthy of a second chance at life to remedy some of the damage wrought by their prior conduct. Absent is any justification for forcing Edward and Joe Sotelo to die in federal prison after decades more of needless incarceration.

It is for this precise purpose that the compassionate release statute—18 U.S.C. § 3582(c)(1)(A)—as recently amended by the First Step Act, authorizes courts to consider a litany

---

[2] United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2021, Fifth Circuit, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/5c21.pdf.

of individualized factors to determine whether "extraordinary and compelling circumstances" exist to warrant a sentence reduction. *See United States v. Cooper,* 996 F.3d 283, 288 (5th Cir. 2021). The compassionate release statute does not limit what qualifies as an "extraordinary and compelling circumstance," and the Fifth Circuit recently held that a court is only bound by the sentencing factors in 18 U.S.C. § 3553(a) when exercising its broad discretion. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

The factors set forth in § 3553(a), as applied to the Sotelo Brothers, demonstrate the requisite extraordinary and compelling circumstances warranting a sentence reduction. *First*, the Sotelo Brothers have fully and unconditionally rehabilitated and have gained innumerable trade skills that would make them an asset—not a liability—to their family and community. *Second*, the Sotelo Brothers pose an inordinately low risk of recidivism. *Third*, mandatory life sentences are no longer the law and district judges are instead instructed to consider individualized factors before handing down such a draconian penalty. *Fourth*, the Sotelo Brothers' sentences are grossly disproportionate to the sentences of every co-defendant named in the operative superseding indictment, all of whom have been released. *Finally*, the Sotelo Brothers' age, health, and incarceration greatly increase the risk of illness or death posed by COVID-19. Viewed in their totality, these factors demonstrate the necessary "extraordinary and compelling" circumstances for this Court to give the Sotelo Brothers a second chance.

## STATEMENT OF FACTS

### I.    Personal History.

Edward and Joe Sotelo were born in Fort Worth, Texas, the second and fourth of six children of Joe Sotelo, Sr. ("Joe Sr.") and Mary Sotelo. *See* Presentence Report for Edward Ruben Sotelo ("Edward PSR") at ¶ 116; Presentence Report for Joe Angelo Sotelo, Jr. ("Joe PSR") at ¶ 106. The Sotelo Brothers were raised in a lower-economic household located in the tight-knit

Rock Island neighborhood of Fort Worth. *See* Edward PSR ¶¶ 117, 122; Joe PSR ¶¶ 107, 113. The Sotelo Brothers were supported entirely by the tireless efforts of their mother, Mary Sotelo, who simultaneously worked numerous jobs—such as a factory laborer, seamstress, and tailor—to make ends meet. *See* Edward PSR ¶ 117; Joe PSR ¶ 107. Despite her best efforts, the Sotelo Brothers grew up hard. For example, Joe Sotelo dropped out of elementary school in 1972 after obtaining only a sixth grade education. *See* Joe PSR ¶ 118. Edward assumed the responsibility of caring for and raising his younger siblings and family members. *See* Zambrano Decl., Exhibit A at App. 5.

This upbringing was made even more complicated by the Sotelo Brothers' father—Joe Sr. His presence and reputation loomed large over the Sotelo Brothers' lives and served as a constant source of dangerous and unsavory behavior. Joe Sr. officially worked sporadic and unstable jobs and provided little financial support to the family. *See* Edward PSR ¶¶ 117, 120; Joe PSR ¶¶ 107, 110. But in reality, Joe Sr.'s profession was a violent heroin dealer. *See* Edward PSR ¶¶ 118-120; Joe PSR ¶¶ 108-110. Joe Sr. amassed an extensive arrest record that caused him to spend the vast majority of Edward and Joe's childhoods in various state and federal prisons. *See id*. For example, Joe and Edward were only 7 and 2 years old, respectively, when their father was first incarcerated in 1967 for assault with intent to murder. *See* Edward PSR ¶ 118; Joe PSR ¶ 108. In June 1975, Joe Sr. was for the first time sentenced to federal prison for controlled substance violations. *Id*.

The Sotelo Brothers observed their father's lifestyle and choices in the high-risk community in which they were raised. Following in his footsteps, the Sotelo Brothers turned to drug dealing—a constant presence in their neighborhood—to support their expanding family, including Joe's young daughter and son. *See* Joe PSR ¶¶ 111-112. Despite these mounting pressures, the Sotelo Brothers were never affiliated or in any way became involved with gang

activity. Neither have the Sotelo Brothers had any history of substance or alcohol abuse. *See* Edward PSR ¶ 126; Joe PSR ¶ 117. For the Sotelo Brothers, drug dealing was less of a choice than a means to an end, made all the more difficult to avoid given their father's influence. *See, e.g.,* Edward PSR ¶ 134; Joe PSR ¶ 124.

## II.    Procedural Background.

On January 18, 1995, Edward—with one co-conspirator—was originally named in a two-count indictment issued in the Northern District of Texas, Fort Worth Division, which accused him of violating federal controlled substance laws. *See* Edward PSR ¶ 1. On February 14, 1995, Edward was again named in a second, separate indictment with two different co-conspirators in the same court again alleging violations of controlled substance laws. *See id*. On March 14, 1995, the Government filed a twelve count superseding indictment that named both Edward and Joe, as well as seven co-conspirators, as defendants. *See id*. Edward was charged with all twelve counts in the superseding indictment, while Joe was alleged to have played a "limited" role and was charged with only two counts. *See id*. ¶¶ 1-9; Joe PSR ¶ 43.

The Sotelo Brothers and four of their co-defendants pled not guilty to the charges levied against them in the superseding indictment and chose to try their case before a jury. *See* Edward PSR ¶ 10.[3] On May 18, 1995, the jury found Edward guilty on nine counts, and Joe Sotelo guilty on two counts, in the superseding indictment. *See id*. ¶¶ 11, 19. Edward was convicted of, *inter alia*, operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 and distribution of more than five kilograms of cocaine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2. *See* Edward PSR ¶¶ 3, 9, 11-12. Joe was convicted of

---

[3] Three of the Sotelo Brothers' co-defendants pled guilty to the charges levied against them in the superseding indictment and have since been released.

**DEFENDANTS' MOTION FOR COMPASSIONATE RELEASE
AND MEMORANDUM IN SUPPORT**                                            **Page 4**

conspiracy in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Given their respective offense levels and then-existing federal sentencing law, the sentencing court was required—without possessing any discretion to deviate or otherwise consider any individualized factors—to sentence Joe to a term of imprisonment between 360 months to life, and sentence Edward to a mandatory minimum of life imprisonment. On August 17, 1995, the sentencing court sentenced Edward and Joe to serve life sentences for their convictions.

## ARGUMENT

The Sotelo Brothers' case presents a unique combination of circumstances which, considered together, are sufficiently extraordinary and compelling to warrant a compassionate release and sentence reduction. The Sotelo Brothers take full and unqualified responsibility for their prior criminal actions. The Sotelo Brothers engaged in an enterprise that sold a large amount of marijuana and cocaine in the North Texas-area during the late 1980s and early 1990s. But these non-violent crimes do not alone define the Sotelo Brothers in the years since their original sentencing. Their exceptional efforts at rehabilitation—all performed without any realistic hope for release—coupled with the other individualized factors discussed herein, demonstrate that the Sotelo Brothers are worthy of a second chance at life. The Sotelo Brothers' respective nearly 30-year sentences have served their purpose, and the brothers are eager to come out better men on the other side. In light of these factual and legal circumstances, the Sotelo Brothers respectfully request a sentence reduction to time served.

**I.     The Court has the authority to reduce the Sotelo Brothers' sentences under the First Step Act and 18 U.S.C. § 3582(c)(1)(A).**

The body of law governing criminal sentencing has undergone a sea change since the Court sentenced the Sotelo Brothers in 1995. In 2005, the Supreme Court held that the recommendations

in the federal Sentencing Guidelines *are not* "*mandatory*"; rather, they are "*effectively advisory*." *United States v. Booker*, 543 U.S. 220, 245 (2005) (emphasis added). As a result, sentencing has recalibrated to emphasize judicial discretion and the individual circumstances of a particular defendant. *See Rita v. United States*, 551 U.S. 338, 347–48 (2007); *Gall v. United States*, 552 U.S. 38, 49–50 (2007).

In 2018, the First Step Act was passed and enacted, which amended the Sentencing Reform Act's structure for compassionate releases. *See* Pub. L. No. 115-391, 132 Stat. 5194. Originally, compassionate release motions could *only* be filed by the Bureau of Prisons ("BOP"). But the BOP "used that power so sparingly that the Department of Justice's Inspector General found in a 2013 report that an average of only 24 imprisoned persons were released each year by BOP motion." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (punctuation omitted). The First Step Act responded to this concern by "remov[ing] the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions" and allowing prisoners to assert such motions on their own behalf. *McCoy*, 981 F.3d at 276. The purpose of the First Step Act was to *broaden and increase* the use of compassionate release. *See United States v. Maumau*, 993 F.3d 821, 824 (10th Cir. 2021) ("Section 603(b) of the First Step Act aimed to increase the use and transparency of compassionate release by amending 18 U.S.C. § 3582(c)(1) to authorize defendants to file their own motions for compassionate release."); *see also* 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Sen. Cardin, co-sponsor of the First Step Act) ("The bill expands compassionate release . . . and expedites compassionate release applications.").

As amended by the First Step Act, the compassionate release statute now provides that a court "upon motion of the defendant after the defendant has fully exhausted all administrative rights . . . may reduce the term of imprisonment . . . after considering the factors set forth in section

3553(a) to the extent that they are applicable, if it finds that . . . [1] extraordinary and compelling reasons warrant such a reduction . . . and [2] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act permits a court to consider a broad range of factors in considering whether to grant a motion for compassionate release. *See Cooper,* 996 F.3d at 288 (5th Cir. 2021) (holding that courts have discretion to decide "whether the nonretroactive sentencing changes to [a defendant's] convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence").

Because the Sentencing Commission has not updated the relevant policy statement— U.S.S.G. § 1B1.13—since enaction of the First Step Act, the Court is not bound by either that "policy statement nor the commentary to it" when "addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F.3d at 392; *see also United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *McCoy*, 981 F.3d at 281.[4] This Court is bound only by the sentencing factors in § 3553(a) and possesses broad "discretion to consider leniency." *United States v. Tolliver*, 529 F. Supp. 3d 619, 624 (N.D. Tex. 2021) (Means, J.).

## II.    The Sotelo Brothers have exhausted their administrative remedies.

To bring a motion for compassionate release, an individual must show that he or she has "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or that thirty days have lapsed "from the receipt of such a request by the

---

[4] Although this policy statement is "not dispositive" or binding in evaluating motions filed by prisoners, courts have recognized that its four general categories—(1) medical condition, (2) age, (3) family circumstances, and (4) other reasons may still "inform[]" a court's analysis "as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *see also United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Although none of these factors are required to be present for this Court to grant the Sotelo Brothers a compassionate release, they respectfully submit that the facts and circumstances underlying their case, as argued herein, demonstrate that *each factor* is met and supports a sentence reduction.

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). On April 27, 2022, Edward and Joe filed separate requests for compassionate release with the wardens of their respective facilities in which they are currently incarcerated. *See* Zambrano Decl., Exhibit B at App. 7; Exhibit C at App. 9. On May 11, 2022, the warden of Joe's facility denied his request. *See* Zambrano Decl., Exhibit D at App. 11. Regarding Edward, the 30-day deadline for the warden to grant his petition passed on May 27, 2022 with no response from the warden. Therefore, both Edward and Joe have exhausted their administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

**III.    The sentencing factors in Section 3553(a) demonstrate extraordinary and compelling circumstances for reducing the Sotelo Brothers' sentences.**

This Court possesses broad discretion to consider the Sotelo Brothers' history, characteristics, and extraordinary efforts at rehabilitation while incarcerated to determine whether a compassionate release is warranted. Section 3582(c)(1)(A) does not define precisely what constitutes "extraordinary and compelling reasons" to justify a sentence reduction or release. Under the First Step Act, "district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (quoting *Brooker*, 976 F.3d at 230). This Court is "bound only" by the "sentencing factors in § 3553(a)." *Shkambi*, 993 F.3d at 393. Those seven factors—which are intended to guide district courts to "impose a sentence sufficient, but not greater than necessary" to achieve the goals of criminal justice—are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

As part of this analysis, courts also consider "combined factors such as sentencing changes, the length of the sentence, and the defendant's particular circumstances." *United States v. Cleveland*, No. 3:13-CR-479-K-1, 2022 WL 562829, at *3 (N.D. Tex. Feb. 23, 2022) (Kinkeade, J.). In addressing a separate section of the First Step Act, the Supreme Court recently held that district courts should "consider *intervening changes of law or fact* in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, at *12 (2022) (emphasis added); *see also United States v. Adams*, 512 F. Supp. 3d 901, 912 (E.D. Mo. 2021) ("Courts routinely focus on a defendant's rehabilitation as one non-dispositive factor contributing to 'extraordinary and compelling reasons.'").

### A.    The Sotelo Brothers' history and characteristics, including their post-conviction rehabilitation and conduct, weigh in favor of a sentence reduction.

Joe and Edward Sotelo experienced extraordinarily troubled upbringings. Their father was a violent heroin dealer who provided little support to his family and spent the vast majority of the Sotelo Brothers' lives incarcerated in state or federal prisons. They were mere children—two and seven years old—when their father was first convicted of serious, violent criminal acts. Joe obtained no formal education beyond the sixth grade after dropping out of elementary school. *See* JS PSR ¶ 118. Edward took on the mantle of caring for his younger siblings and family members. *See* Zambrano Decl., Exhibit A at App. 5. As young men, the Sotelo Brothers committed and were convicted of various criminal offenses. *See* Joe PRS ¶¶ 92-94; Edward PSR ¶¶ 99-106. As noted by the sentencing court, the Sotelo Brothers endured a "difficult and tragic" background. *See* Zambrano Decl., Exhibit E at App. 13.

The Sotelo Brothers are no longer those same men that began serving life sentences over 27 years ago. The grave and serious offenses they committed have wrought havoc on their lives, as well as the lives of their loved ones. Like their father, the Sotelo Brothers have spent nearly half their lives in prison. But the Sotelo Brothers have refused to give up on themselves or become societal burdens. Instead, and in a direct rebuke to their past criminal lives, the Sotelo Brothers chose the tougher road—to better themselves and become role models in the prison community.

This change is best exemplified by the Sotelo Brothers' complete and unqualified rehabilitation efforts. While incarcerated, Joe became proficient in English and earned his General Educational Development ("GED") certificate. *See* Zambrano Decl., Exhibit F at App. 37. Joe also successfully completed the BOP's rigorous Challenge Program, a 500-hour minimum cognitive behavioral program focused on addressing criminal thought and behavioral patterns.[5] *See* Zambrano Decl., Exhibit G at App. 40. Courts have found these precise rehabilitative efforts sufficient to warrant a compassionate release. *See, e.g., United States v. Fowler*, 544 F. Supp. 3d 764, 766 (N.D. Tex. 2021) (Means, J.) (finding defendant's rehabilitative efforts of successfully completing the BOP's Challenge Program and taking numerous courses to obtain employment upon release constituted extraordinary and compelling circumstances); *United States v. Santamaria*, 516 F. Supp. 3d 832, 838 (S.D. Iowa 2021) (finding that defendant's successful completion of the BOP's Challenge Program, obtainment of his GED, and completion of numerous education programs weigh strongly in favor of compassionate release).

Moreover, both Edward and Joe have each successfully completed *hundreds* of hours of training courses, educational classes, and vocational programs in a vast spectrum of topics. *See* Zambrano Decl., Exhibit F at App. 37; Exhibit H at App. 41. Joe specifically has acquired

---

[5] *See* BOP's First Step Act Approved Programs Guide dated October 2020 (last accessed October 7, 2022), at 9 available at https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_202010.pdf.

**DEFENDANTS' MOTION FOR COMPASSIONATE RELEASE**
**AND MEMORANDUM IN SUPPORT**                                    **Page 10**

significant proficiency in electrical and plumbing trades through courses offered in conjunction with local community colleges. For example, Joe satisfactorily completed *215 hours* in courses focused on residential electrician skills. *See* Zambrano Decl., Exhibit I at App. 46. Joe additionally completed *160 hours* in courses focused on commercial electrician skills. *See id.* Joe dedicated himself to these arduous training courses—that required attendance five days per week for three hour sessions—and consistently scored in the top percentile of his class with a continually improving grade point average. *See* Zambrano Decl., Exhibit J at App. 48. In addition to their skill and course work, the Sotelo Brothers have maintained steady employment and accrued minimal disciplinary infractions over the past 27 years. *See* Zambrano Decl., Exhibit F at App. 37; Exhibit H at App. 41; Exhibit K at App. 51; Exhibit L at App. 54; Exhibit M at App. 64 (BOP recommending that Joe be transferred to a lower security facility because he "has maintained clear conduct since December 31, 2009"). The Sotelo Brothers acknowledge these past disciplinary infractions, but note that the vast majority of them occurred well over a decade ago, which signals that they have continued to make progress in their rehabilitations.

The outpour of enthusiastic support from the Sotelo Brothers' friends and family additionally reflects their histories and characteristics. The nine separate character letters submitted in support of Edward and Joe illustrate their rehabilitative efforts and demonstrates the significant value they impart to their family and community. *See generally* Zambrano Decl., Exhibits A, N–V at App. 5, 65-73.[6] The central theme of these letters is the key roles Edward and Joe embody in the lives of their tight-knit family and community, even while incarcerated, and the positive impact they will make if afforded a second chance. Specific anecdotes from the Sotelo

---

[6] These letters were graciously written and respectfully submitted by the following family members and close friends: Melisa K. Christian, Bertha Martinez, Blasa Trujillo, Doria Trujillo, Gary Artiaga, Mary Patino Perez, Mary Sotelo, Savannah Christian-Reagan, and Linda Sotelo Castoreno. *See* Zambrano Decl., Exhibits A, N–V at App. 5, 65-73.

Brothers' former co-defendant, Gary Artiaga (who has since been released from prison and removed from supervised release), further affirms their rehabilitative efforts. *See* Zambrano Decl., Exhibits Q and R at App. 68, 69. For example, Edward has tirelessly worked to further his education and acted as a mentor to fellow incarcerated men faced with circumstances similar to those he encountered in his life. *See* Zambrano Decl., Exhibit Q at App. 68. Joe has fostered his passion for vocational trades and the arts, having employed the latter to create paintings at his facility. *See* Zambrano Decl., Exhibit R at App. 69.

Under these circumstances, further incarceration would not serve any additional purpose of rehabilitation. Although rehabilitation "alone" may not be enough to establish extraordinary or compelling reasons for release—*see, e.g., Shkambi*, 993 F.3d at 391—it remains a "relevant" and "prime consideration" when analyzing a motion for compassionate release. *Tolliver*, 529 F. Supp. 3d at 626; *see also Brooker*, 976 F.3d at 238 (noting that rehabilitation is a factor that may weigh in favor of a sentence reduction); *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) ("For the word 'alone' to do any work—as it must—that means courts can consider rehabilitation as *part* of a compassionate release motion.") (emphasis in original); *United States v. Torres*, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020) ("[R]ehabilitation in combination with the other factors can constitute in their entirety extraordinary and compelling reasons.") (punctuation omitted). Indeed, this type of "evidence of . . . rehabilitation since [the defendant's] original sentencing . . . . provides *the most up-to-date picture of his history and characteristics*." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (emphasis added); *see also United States v. Rainwater*, No. 3:94-CR-042-D(1), 2021 WL 1610153, at *3 (N.D. Tex. Apr. 26, 2021) (Fitzwater, J.) (holding that although defendant committed a series of violent robberies, his "relatively clean overall" disciplinary record in prison and "extensive educational efforts, including obtaining his

GED and various professional certifications" warranted a sentence reduction). The Sotelo Brothers' extensive rehabilitation efforts—coupled with other articulable factors—likewise constitute extraordinary and compelling circumstances.

**B.    The need for the Sotelo Brothers to be punished with life sentences without hope for release no longer exists.**

The Sotelo Brothers' low risk of recidivism and the absence of a need for them to continue serving life sentences create extraordinary and compelling circumstances. An "unjust life sentence" may "constitute[ ] an extraordinary and compelling reason for a sentence reduction" under § 3553(a). *United States v. Rios*, No. 21-10371, 2022 WL 101970, at *1 (5th Cir. Jan. 10, 2022) (remanding case to district court for determination on issue). A lengthy sentence is no longer necessary if it has: (1) served its purpose of punishment and deterrence; (2) the "risk" of an individual "engaging in further criminal conduct is low"; and (3) he will "not be a danger to the safety of any other person or the community." *Adams*, 512 F. Supp. 3d at 915.

To reiterate, the Sotelo Brothers take full accountability for their prior criminal conduct. They have served over 27 years in federal prison as punishment for their convictions for non-violent drug offenses. This length of time is more than sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses. 18 U.S.C. § 3553(2)(A); *see also United States v. Leathers*, No. 01-CR-20-SRB-1, 2020 WL 7636222, at *2 (W.D. Mo. Dec. 22, 2020) (finding incarceration for nearly two decades was sufficient to satisfy the goals of sentencing). These lengthy sentences have also obviated the need for further incarceration. As numerous courts have highlighted, "almost thirty years is a long time behind bars for any measure for anyone." *United States v. Hope*, No. 90-CR-6108-KMW-2, 2020 WL 2477523, at *2 (S.D. Fla. Apr. 10, 2020); *see also United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 508 (S.D. Iowa 2020) (finding the need for a life sentence "appears weaker after

two decades of incarceration" and reducing mandatory life sentence under prior sentencing scheme to time served); *United States v. Stephenson*, 461 F. Supp. 3d 864, 874 (S.D. Iowa 2020) ("[T]he 'need for the sentence imposed' appears weaker after fifteen years of incarceration.").

The Sotelo Brothers' life sentences are also unnecessary to protect the public. 18 U.S.C. § 3553(2)(C). The BOP's own Risk Pattern Assessment rates the risk of Edward or Joe recidivating at "low." *See* Zambrano Decl., Exhibits W and X at App. 74, 75. Moreover, although serious, the crimes underlying the Sotelo Brothers' convictions were non-violent drug offenses and they have incurred minimal disciplinary infractions over nearly three decades of incarceration. *See Ledezma-Rodriguez*, 472 F. Supp. 3d 498. Further, Edward and Joe's advanced ages—58 and 62 years old—makes any future criminal activity substantially unlikely and further decreases recidivism concerns. *See United States v. Wadena*, 470 F.3d 735, 740 (8th Cir. 2006) (noting age and deteriorated health reduces the risk of re-offending); *Leathers*, 2020 WL 7636222, at *3 ("[G]iven [defendant's] age (66), his chance of recidivism is low."); *see also generally* United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-amongfederal-offenders.

As a further safeguard against any potential recidivism, the Sotelo Brothers were sentenced to five years of supervised release separate from their life sentences. That re-acclimation period is more than sufficient to ensure their continued good behavior and tampers any concerns of future criminal activity. *See Leathers*, 2020 WL 7636222, at *3 ("Defendant is subject to a five-year term of supervised release upon his release from imprisonment, ensuring he will continue to be adequately monitored."); *Stephenson*, 461 F. Supp. 3d at 874 (noting that noncustodial sentences

also curtail "prized liberty interests" and "the Defendant always faces the harsh consequences that await if he violates the conditions" attached to such a sentence).

Finally, the Sotelo Brothers possess a strong support system eager to assist in and ensure their successful re-entry into society. *See generally* Zambrano Decl., Exhibits A, N–V at App. 5, 65-73. The Sotelo Brothers will have immediate access to safe housing, reliable transportation, and gainful employment upon their release. They also have no history with potential recidivism risk factors such as gang affiliation or drug and alcohol abuse. In sum, the 27 years Edward and Joe have spent behind bars has more than satisfied Congressional intent in exacting appropriate laws to protect society and punish serious offenses. The First Step Act was enacted specifically to give people in prison like the Sotelo Brothers a second chance.

### C. The types of sentencing ranges available under the current law for the Sotelo Brothers' offenses support a sentence reduction.

The discretion afforded to district courts by recent Supreme Court decisions and the First Step Act also supports a sentence reduction. Numerous courts have held that "drastic sentencing disparities created by sentencing law reforms can be an extraordinary and compelling reason supporting release." *Ledezma-Rodriguez*, 472 F. Supp. 3d at 504 (collecting cases). Courts are now authorized and encouraged to "consider individual defendants' circumstances and weigh whether a particular sentencing disparity is truly 'extraordinary and compelling' on a case-by-case basis." *United States v. Haynes*, No. 4:96-CR-40034, 2021 WL 406595, at *5 (C.D. Ill. Feb. 5, 2021) (citing *McCoy*, 981 F.3d at 286).

When the sentencing court sentenced the Sotelo Brothers in 1995, its discretion was significantly curtailed. For example, it possessed no authority to consider any sentence for Edward other than a statutory, mandatory minimum of life. Joe similarly faced a mandatory sentencing range of 360 months to life. The types of sentences and sentencing ranges today are drastically

different than those that existed nearly three decades ago. At that time, the Supreme Court had not decided *Booker*. In that case, the Supreme Court held that the Federal Sentencing Guidelines are *advisory*, rather than mandatory, and the mandatory Guidelines system violated the Sixth Amendment. *See Booker*, 543 U.S. at 226-27. During sentencing, the sentencing court was unable to consider relevant mitigating factors because the Guidelines mandated that they serve life sentences. In the wake of *Booker*, courts may depart from the Guidelines and are required to consider the individual circumstances of the offender and the offense at sentencing. *See Gall*, 552, U.S. at 50 (a district judge "must make an individualized assessment based on the facts presented").

Under today's sentencing framework, the Sotelo Brothers could have been approaching the end of their sentences. Instead, they are destined to sit behind bars for the remainder of their lives. Although their convictions and life sentences stemmed from serious offenses, that in no way disqualifies them from obtaining a release date. *See, e.g., United States v. Johnson*, No. CR 02-310 (JDB), 2022 WL 2866722, at *13 (D.D.C. July 21, 2022) (granting compassionate release even though defendant had "a lengthy criminal history" because "[t]he over 20-year sentence [defendant] has served fits [the] description" of "a serious punishment" and "adequately reflects the seriousness of his offenses"); *Haynes*, 2021 WL 406595, at *7 (finding defendant entitled to sentence reduction even though his "crimes were inarguably serious and deserving of harsh punishment, and his record in prison is less than exemplary," because a "30-year and 1-day sentence . . . remains harsher than the average sentence for murder [and] provides just punishment and adequate deterrence"); *Ledezma-Rodriguez*, 472 F. Supp. 3d at 506 ("[R]ightly or wrongly, this country's criminal justice system is premised on the idea that a person can—and hopefully will—change after several years locked in prison."). The Sotelo Brothers' individualized factors—such as, *inter alia*, their histories, family circumstances, and nature of the offenses—are persuasive

factors in the sentencing calculus. Considering the "principle that a sentence should be 'sufficient' but not greater than necessary," the Court's discretion in crafting an appropriate sentence supports a sentence reduction to time served. *See Tolliver*, 529 F. Supp. 3d at 626.

### D.    The need to avoid gross discrepancies in sentences between co-defendants supports a compassionate release.

The disproportionality between the sentences handed down to the Sotelo Brothers relative to the sentences of their co-defendants—all of whom have been released—also supports a sentence reduction. It is well understood that "[a] sentencing disparity may, in limited circumstances, constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release." *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021) (collecting cases); *see also Adams*, 512 F. Supp. 3d at 913; *United States v. Johnson*, No CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020).

The superseding indictment charged the Sotelo Brothers and seven co-conspirators with non-violent drug offenses. Despite each individual playing a role in the drug distribution organization, only the Sotelo Brothers remain incarcerated. Without intervention by this Court, they will spend the remainder of their lives in prison. This disparity in punishment is particularly apparent as to Joe, who played only a "***limited***" role in the drug distribution activities. *See* Joe PSR ¶ 43 (emphasis added). Although Edward was labeled as a "leader and organizer" of these activities, *see* Edward PSR ¶ 24, that does not disqualify him from obtaining relief or negate the sentencing disparity relative to co-defendants that bore significant culpability. *See, e.g., Torres*, 464 F. Supp. 3d at 658 (granting compassionate release for brothers who were leaders of "a large-scale, street-level heroin distribution network" and sentenced to life under the "kingpin provision" because, *inter alia*, "similarly situated . . . leaders of major drug trafficking organizations [ ] have received far lower sentences than life without parole" and "their sentences appear to be starkly

disproportionate to the sentences received by their twelve co-defendants, none of whom remain incarcerated"). The Sotelo Brothers have demonstrated that they too are worthy of a second chance. Compassionate release presents an opportunity to eliminate the massive disparity between the Sotelo Brothers and their co-conspirators. *See United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019).

### E.    The Sotelo Brothers' release plans demonstrate their commitment to rehabilitation and community engagement.

If this Court were to grant this Motion and reduce the Sotelo Brothers' sentences, they are prepared to re-enter society with full support from family and friends, including safe living accommodations and immediate employment opportunities in Fort Worth. *See generally* Zambrano Decl., Exhibits A, N–V at App. 5, 65-73. The Sotelo Brothers intend to reside with and take care of their 85 year old mother, Mary Sotelo, and will have access to reliable transportation. *See* Zambrano Decl., Exhibit T at App. 71. Owing to the Sotelo Brothers' dedication to rehabilitation, they have learned invaluable vocational and life training skills during their incarcerations. These efforts have afforded the Sotelo Brothers gainful employment options upon release. For example, Joe Sotelo intends to employ the skills he learned from vocational instruction courses as an electrician. Edward similarly has been offered multiple opportunities to work at successful restaurants owned and operated by his family and friends in Fort Worth immediately upon release.[7] *See* Zambrano Decl., Exhibits S and T at App. 70, 71. Above all else, the Sotelo Brothers seek the opportunity to enjoy the last years of life with their 85 year-old mother, Mary.

The Sotelo Brothers' release plans are not merely self-fulfilling. A key part of their future plan includes devoting their time and resources to preventing at-risk teenagers from their

---

[7] The Sotelo Brothers' mother and sister are the owners of the Fort Worth restaurant Tia's on the Bluff. Moreover, their close friend, Mary Patino Perez, is the owner of the restaurant Enchiladas Ole, which has locations in Fort Worth and North Richland Hills.

neighborhood from falling prey to the same criminal activities and carceral system that has plagued their family. The Sotelo Brothers believe they can assist young men and women from disadvantaged backgrounds in overcoming their circumstances and avoiding many of the mistakes they made. Accordingly, the Sotelo Brothers' release plans further support a reduction of their sentences. *See, e.g., United States v. Tuakalau*, No. 2:08-CR-431-TC-4, 2022 WL 1091334, at *3 (D. Utah Apr. 12, 2022) (granting motion for compassionate release because defendant "identifies a viable release plan, including a supportive family ready to house him and a job with his stepfather's company. More prison time would not contribute to [defendant's] further rehabilitation; rather, it would unnecessarily continue his punishment").

### F.    The Sotelo Brothers' deteriorating health and the ongoing COVID-19 pandemic support a sentence reduction.

The Sotelo Brothers are 58 and 62 year old Hispanic males with a litany of serious medical conditions that militate in favor of a sentence reduction. For example, Edward is rapidly losing his vision as a result of diabetic retinopathy, glaucoma, and cataracts. *See* Zambrano Decl., Exhibit Y at App. 76. Edward also suffers from chronic kidney disorders, coronary atherosclerosis, hypertension, and Type 2 diabetes. *See id.* Joe similarly has been diagnosed with hypertension and Type 2 diabetes. *See* Zambrano Decl., Exhibit Z at App. 128. The Sotelo Brothers' advanced age and slew of worsening health conditions—considered in tandem with all the factors articulated above—accentuate the justification for a compassionate release. Courts have found extraordinary and compelling circumstances in similar instances. *See, e.g., United States v. Howard*, No. 3:09-CR-305-B-1, 2020 WL 4784697, at *2 (N.D. Tex. Aug. 18, 2020) (Boyle, J.) (granting compassionate release to 66 year old defendant with hypertension, COPD, and asthma); *United States v. Ullings*, No. 1:10-CR-406, 2020 WL 2394096, at *4-5 (N.D. Ga. May 12, 2020) (same for 65 year-old prisoner with hypertension and obesity); *United States v. Foreman*, No. 3:19-CR-

62 (VAB), 2020 WL 2315908, at *2 (D. Conn. May 11, 2020) (same for 58 year-old prisoner with hypertension and obesity); *United States v. Amarrah*, 458 F. Supp. 3d 611, 612 (E.D. Mich. 2020) (same for 45 year-old prisoner with Type 2 diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma).

The Sotelo Brothers' health conditions must also be viewed through the lens of the ongoing effects of the COVID-19 pandemic. Although the mere presence of COVID-19 in prison populations may not alone justify a compassionate release—*see, e.g.*, *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021)—the risks of continually evolving variants and the strains on elderly and susceptible populations nonetheless may constitute extraordinary and compelling circumstances. *See United States v. Andrews*, No. 3:93-CR-31, 2021 WL 3085314, at *3 (E.D. Tenn. July 21, 2021). Hypertension and diabetes—which both Edward and Joe suffer from—are the most frequent and strongest risk factors for severe COVID-19 illnesses and deaths. *See* Kompaniyets L, Pennington AF, Goodman AB, Rosenblum HG, Belay B, Ko JY, et al.*, Underlying Medical Conditions and Severe Illness Among 540,667 Adults Hospitalized With COVID-19*, March 2020–March 2021. Centers for Disease Control and Prevention (July 1, 2021), available at https://www.cdc.gov/pcd/issues/2021/21_0123.htm. Chronic kidney disease and heart conditions likewise have been recognized as underlying conditions that place individuals at an increased risk of severe illness or death from COVID-19. *See* Centers for Disease Control and Prevent, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19* (last updated June 15, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

Moreover, the BOP is continuing to experience a crisis in confining prisoners without subjecting them to a high risk of infection. For example, as of January 6, 2023, 415 men in prison

and 174 staff members at FCI El Reno—the facility in which Joe is incarcerated—have contracted COVID-19.[8] FCI El Reno currently remains a "Level 2" facility, which mandates "moderate modifications" at the prison. And 74 men in prison and 284 staff members at FCC Hazleton—the facility in which Edward is incarcerated—have contracted COVID-19.[9] Because they remain incarcerated, the Sotelo Brothers cannot protect their health in the same ways as the general population. Courts under similar circumstances have noted that "[t]aking precautions to prevent contracting COVID-19 is particularly challenging within a prison environment, let alone in a prison that has already succumbed to an outbreak." *United States v. Robinson*, No. 18-CR-3042-4-SRB, 2020 WL 5200929, at *2 (W.D. Mo. July 22, 2020). In sum, the Sotelo Brothers' serious medical afflictions, coupled with their increased risk of suffering serious or deadly effects from contracting COVID-19, create extraordinary and compelling circumstances that justify a compassionate release. *See United States v. Puckett*, No. 3:02-CR-206-K (01), 2022 WL 394758, at *4 (N.D. Tex. Feb. 9, 2022) (Kinkeade, J.) ("[C]onsidering [defendant's] health overall . . . his vulnerability due to his multiple specific conditions documented by the record, and the COVID-19 pandemic . . . the Court finds that [defendant's] unique susceptibility to serious complications should he contract COVID-19 is an extraordinary and compelling reason for his release.").

## CONCLUSION

The Sotelo Brothers acknowledge and take full responsibility for the serious mistakes that led to their imprisonment. They have paid for those mistakes every single day for the past 27 years. Although faced with no opportunity of ever being released, the Sotelo Brothers have chosen to embark on a journey to improve themselves and make a difference in their lives, as well as the lives of others both inside and outside prison walls. The Sotelo Brothers have respectfully request

---

[8] https://www.bop.gov/coronavirus/index.jsp.
[9] *Id*.

that the Court grant them a second chance at life to prove their value and right their previous

wrongs by reducing their life sentences to time served pursuant to § 3582(c)(1)(a).


Dated: January 17, 2023                              Respectfully submitted,


                                                     /s/ *Angela C. Zambrano*
                                                     Angela C. Zambrano
                                                     Texas State Bar No. 24003157
                                                     angela.zambrano@sidley.com
                                                     Spencer M. Stephens
                                                     Texas State Bar No. 24120475
                                                     spencer.stephens@sidley.com
                                                     Imani N. Maatuka
                                                     Texas State Bar No. 24125653
                                                     imaatuka@sidley.com
                                                     **SIDLEY AUSTIN LLP**
                                                     2021 McKinney Avenue, Suite 2000
                                                     Dallas, TX 75201
                                                     (214) 981-3300
                                                     (214) 981-3400 (facsimile)

                                                     Brittany K. Barnett
                                                     Texas State Bar No. 24078196
                                                     brittany@buriedaliveproject.org
                                                     **BURIED ALIVE PROJECT**
                                                     3400 Oak Grove Avenue, Suite 370
                                                     Dallas, Texas 75204
                                                     Telephone: (214) 919-4421
                                                     E-mail: bkb@brittanykbarnett.com

                                                     **ATTORNEYS FOR DEFENDANTS**
                                                     **EDWARD RUBEN SOTELO AND**
                                                     **JOE ANGELO SOTELO, JR.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure

and this Courts' CM/ECF filing system on January 17, 2023.

*/s/ Angela C. Zambrano*
Angela C. Zambrano